UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/30/2018

COMPUNNEL SOFTWARE GROUP, INC.,

Petitioner,

v.

ARVIND GUPTA, and R. ALEXANDER
ACOSTA, in his capacity as Secretary,
United States Department of Labor,

Respondents.

No. 14-CV-4790 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Arvind Gupta, proceeding pro se, seeks judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, of orders of an Administrative Law Judge ("ALJ") and the Administrative Review Board ("ARB") of the Department of Labor ("DOL"). The challenged orders concern Gupta's DOL complaint against his former employer, Compunnel Software Group, Inc., for violations of the H-1B visa program of the Immigration and Nationality Act ("INA"). Gupta also brings associated claims against Compunnel. Before the Court are Compunnel's motion for summary judgment, the Secretary of Labor's motion for summary judgment, and Gupta's cross-motion for partial summary judgment. For the reasons that follow, the motions for summary judgment of Compunnel and the Secretary are granted and Gupta's motion for partial summary judgment is denied.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.[1]

---

[1] The facts are drawn from the complete Administrative Record ("AR") submitted to the Court on November 17, 2017. Dkt. 202. In reviewing the agency's actions under the APA, the Court is "limited to

## I.   Gupta's Employment with Compunnel

Gupta is a citizen of India who was employed by Compunnel to work in the United States pursuant to an H-1B visa. AR 27. The H-1B visa program permits non-immigrant foreign workers to work temporarily in the United States in "specialty occupation[s]." 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1182(n). "Specialty occupations" are defined by the INA as jobs that require the application of "a body of highly specialized knowledge," as well as attainment of a bachelor's degree or higher in the specialty. 8 U.S.C. § 1184(i)(1).

In order to hire a non-immigrant worker pursuant to the H-1B provisions of the INA, an employer must submit specified materials to the DOL and the Department of Homeland Security ("DHS"). First, the employer must file a Labor Condition Application ("LCA") with the DOL, specifying, among other things, the occupation the employer seeks to fill and the wage rate. 8 U.S.C. § 1182(n)(1)(A); 20 C.F.R. § 655.730(c). On the LCA, the employer must also attest that he will, among other things, pay the nonimmigrant the stipulated wage rate for the period of authorized employment. 20 C.F.R. § 655.730(d); *see* 8 U.S.C. § 1182(n)(1)(A), (2)(C)(vii)(I). This wage obligation applies throughout the period of authorized employment, including any "nonproductive" time "due to a decision by the employer" (such as a "lack of work"). 8 U.S.C. § 1182(n)(2)(C)(vii)(I), (IV); 20 C.F.R. 655.731(c)(7)(i), (ii). After filing the LCA and obtaining the DOL's certification, the employer must file an H-1B petition with the DHS's United States

---

examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Riverkeeper, Inc. v. U.S. E.P.A.*, 358 F.3d 174, 184 (2d Cir. 2004); *accord* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). After this case was reopened in December 2016, Compunnel and Gupta were permitted to take additional discovery related to the private dispute between them. Dkt. 189. Gupta was not, however, permitted to engage in discovery against the Secretary. Dkt. 211. The Court considers the evidence developed outside the administrative record only to the extent it considers the private dispute between Gupta and Compunnel.

Citizenship and Immigration Services ("USCIS"). 20 C.F.R. § 655.705(a), (b). If USCIS approves the H-1B petition, the prospective employee may then apply for an H-1B visa. AR 1251. A prospective employee who has been previously approved for an H-1B visa is permitted to accept new employment in the United States upon the new employer's filing of an H-1B petition, with his employment authorization extended while the petition is under review. 8 U.S.C. §1184(n).

On December 1, 2006, Compunnel initiated Gupta's application for H-1B employment by filing an LCA with the DOL. AR 1244, 49–51. At the time, Gupta had already been approved for an H-1B visa and had entered the United States pursuant to the H-1B petitions of two other employers, Wipro Limited and Headstrong, Inc.[2] AR 1244–45. The DOL certified Compunnel's LCA, and Compunnel then filed an H-1B petition, which was received by USCIS on December 11, 2006. AR 1245, 48. USCIS then approved Compunnel's H-1B petition for a period of authorized employment running from February 27, 2007 through April 30, 2009. AR 1245. Gupta began working for Compunnel in February 2007.

From February 2007 until April 30, 2009, Gupta resided in the United States and was employed by Compunnel. AR 1246–49. During this time period, Gupta at times worked actively on projects and at times was "nonproductive." *Id.* Specifically, Gupta worked actively from approximately Febrary 5, 2007 to June 6, 2007; June 11, 2007 to July 16, 2007; and December 11, 2007 to March 31, 2008. *Id.* Gupta was nonproductive for a total of approximately a year and a

---

[2] The Court takes judicial notice of another case that Gupta has pending before this Court: *Gupta v. Headstrong, Inc.*, No. 17-CV-5286 (RA), 2018 WL 1634870, at *1 (S.D.N.Y. Mar. 30, 2018). *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003). In that case, Gupta entered into a settlement agreement with his employer in May 2008 and thereafter proceeded to challenge that agreement and its release in the DOL and in this Court. *See Headstrong*, 2018 WL 1634870, at *1, 2. Similar to the allegations here, Gupta claimed that he rescinded the agreement after entering into it, that the agreement lacked consideration, and that he entered into the contract under duress and the influence of fraud. *See id.* at *3, 4. In 2015, just one year prior to his entering a settlement in this case, the DOL ruled on his challenge to the agreement with Headstrong, concluding that "Headstrong had no remaining monetary liability because of the agreement's release of all claims." *Id.* at *2.

half—from July 23, 2007 to December 10, 2007, and then again from March 31, 2008 to April 30, 2009. AR 1247–48. On April 30, 2009, Gupta left the United States. AR 1249.

## II. Gupta's DOL Compaint and Initial Proceedings Before the ALJ and ARB

On November 17, 2008 Gupta filed a complaint with the DOL alleging that Compunnel had violated the H-1B provisions of the INA. AR 413–419. He alleged, among other things, that Compunnel had failed to pay him for nonproductive time and, as to productive time, had failed to pay him the wage rate required by the law. *Id.* A few months later, Gupta amended his complaint to add further claims, including a claim that Compunnel had retaliated against him for disclosing the company's H-1B violations to Compunnel officials. AR 429–438. The Wage and Hour Division ("WHD") of the DOL investigated Gupta's complaint and issued a determination letter concluding that Compunnel "failed to pay wages as required." AR 1–4. The WHD further concluded that Compunnel owed Gupta $6,976.00 in back wages, but determined that the company had already paid the back wages in full. AR 1, 1243. The WHD declined to impose a civil monetary penalty. AR 4.

Gupta disputed the WHD's determination and requested a hearing before an ALJ. AR 810. On February 1, 2012 the ALJ affirmed, concluding that Compunnel owed Gupta the $6,976.00 in back wages for certain periods of productive time, but that Compunnel did not owe Gupta back wages for his nonproductive time. AR 807–22. The ALJ likewise affirmed the WHD's determination that Compunnel's liability had already been discharged. AR 821. Finally, the ALJ denied Gupta's retaliation claim on the grounds that Gupta had failed to establish any adverse action or retaliatory motive. AR 818–21.

Gupta appealed to the ARB. On May 29, 2014, the ARB issued a Decision and Order of Remand, which in substantial part reversed the determinations of the ALJ in favor of Gupta.

4

AR1243–63. Contrary to the determinations of the ALJ, the ARB concluded that Compunnel owed Gupta back wages, benefits, and interest for Gupta's nonproductive periods from July 23, 2007 to December 1, 2007 and March 31, 2008 to April 30, 2009. AR 1258–60. The ARB also vacated the ALJ's denial of Gupta's retaliation claim, and affirmed (on other grounds) the ALJ's determination that Gupta was not owed back wages from December 1, 2006 to February 2, 2007. AR 1252–55. The ARB remanded to the ALJ for (1) calculation of the damages owed to Gupta for his nonproductive time and (2) reconsideration of Gupta's retaliation claim. AR 1263.

### III.    Compunnel's Petition for Review and Initial Proceedings Before this Court

On June 27, 2014, before the ALJ addressed Gupta's case on remand, Compunnel petitioned this Court for judicial review of the ARB's order. Dkt. 2. Gupta answered the petition and filed numerous counterclaims against Compunnel, as well as cross-claims against the Secretary. Dkt. 22, 33. On October 22, 2014, this Court held that, because the ARB's order remanded the case to the ALJ, the order was not final and was therefore not yet subject to judicial review. Dkt. 38 at 3. Accordingly, the Court dismissed without prejudice (1) Compunnel's claims for review of the ARB order and (2) five of Gupta's counterclaims and cross-claims, all of which were also based on review of that order. Dkt. 38 at 3. The Court directed the ALJ—who had held the case in abeyance pending a decision from this Court on Compunnel's petition—to consider the case on remand and to issue an order within 30 days. *Id.* at 3–4.

While the ALJ considered the case on remand, Gupta's remaining counterclaims against Compunnel (for breach of contract and damages) proceeded before this Court. On March 17, 2015, this Court granted Compunnel's motion for judgment on the pleadings on those claims. Dkt. 86.

### IV.    Post-Remand Proceedings Before the ALJ and ARB

Meanwhile, the ALJ lifted its prior order holding the case in abeyance and proceeded to consider Gupta's case on remand. AR 1369–71. Between November 2014 and January 2016, Gupta and Compunnel submitted numerous briefs and motions to the ALJ, including motions to reopen the record, to strike exhibits from the record, to authenticate USCIS documents, and to obtain litigation costs and interest. *See, e.g.*, AR 1419, 1512, 1373, 1389. The ALJ issued at least six orders ruling on these various requests. *See, e.g.*, AR 1383, 1579.

Toward the end of January 2016, Compunnel and Gupta communicated conflicting messages to the ALJ about the possibility of settling their dispute. AR 1604–07. For example, on January 29, 2016, Compunnel's counsel emailed the office of the ALJ (copying Gupta) and stated that Compunnel and Gupta had negotiated a settlement agreement. AR 1607. Approximately ten minutes later, Gupta replied to that email stating that he "categorically den[ied] . . . having agreed to any settlement agreement[.]" AR 1604. One hour after that, the ALJ's law clerk replied to both parties, informing them that the status of the case remained unchanged and explaining that should the parties wish to settle, they would need to follow the "mandatory process" of submitting a signed stipulation of settlement and joint motion requesting the ALJ's approval. AR 1603. The clerk referred the parties to the procedures for "approval of settlement or consent findings" outlined in the Rules of Pratice and Procedure for Administrative Hearings before the Office of Administrative Law Judges. *Id.*; *see* 29 C.F.R. § 18.71.[3] The email concluded that "[u]ntil Judge Timlin receives

---

[3] 29 C.F.R. § 18.71 states as follows:
   (a) Motion for approval of settlement agreement. When the applicable statute or regulation requires it, the parties must submit a settlement agreement for the judge's review and approval.
   (b) Motion for consent findings and order. Parties may file a motion to accept and adopt consent findings. Any agreement that contains consent findings and an order that disposes of all or part of a matter must include:
      (1) A statement that the order has the same effect as one made after a full hearing;

these two documents and approves their content in an issued Order, the case remains before her and ready for a full adjudication." *Id.*

Approximately six weeks later, on March 9, 2016, Gupta and three representatives from Compunnel appeared in person at the office of the ALJ. AR 1741, 1696, 1613. The parties had made no prior appointment, and the ALJ was not in the office. AR 1613. The parties met with the ALJ's law clerk, who memorialized his recollection of the events in a "memo to file," which is part of the administrative record and is signed and dated March 9. *Id.*. According to this memo, Compunnel's representatives arrived at the office and told the clerk that the parties had reached a settlement agreement that they wished to sign before the ALJ that day. *Id.* The Compunnel representatives had brought with them cashier's checks made out to Gupta. *Id.* Shortly thereafter, Gupta arrived. *Id.* The law clerk explained to Gupta that the settlement procedure required a signed agreement from both parties, as well as the ALJ's determination that the terms of the agreement were fair. *Id.* Only after that, the law clerk explained, could "money exchange hands." *Id.* Gupta stated that he wanted to receive cash that day and refused to sign the agreement, prompting Compunnel to offer Gupta the entire amount agreed upon—$28,000—up front, instead of in installments. AR 1614. According to the law clerk's memo, Gupta agreed to the proposed change, and the law clerk instructed Compunnel to handwrite and sign off on the amendment directly on the agreement, which Compunnel did. *Id.* After further discussions, during which Gupta raised concerns about another term in the agreement, the law clerk spoke with the ALJ on the phone. *Id.* After describing the situation and Gupta's concerns about the agreement to the

---

(2) A statement that the order is based on a record that consists of the paper that began the proceeding (such as a complaint, order of reference, or notice of administrative determination), as it may have been amended, and the agreement;
(3) A waiver of any further procedural steps before the judge; and
(4) A waiver of any right to challenge or context the validity of the order entered into in accordance with the agreement.

ALJ, the ALJ asked the law clerk to request that the parties return the next day to resume discussions. *Id.* The law clerk notified the parties, who agreed to return to the office the next day. AR 1615.

The next day, March 10, 2016, the parties met before the ALJ. AR 1696, 1741. The details of what happened that day are in dispute. According to Compunnel, the parties jointly moved to settle the matter, and the ALJ then approved the settlement agreement and dismissed the case with prejudice. AR 1741. According to Gupta, Gupta informed the ALJ that he did not agree to settle his INA claims and, during a moment when Gupta and Compunnel's representatives were left alone, Compunnel induced Gupta to sign the agreement by falsely representing to him that by doing so he would release only his legal claims against Compunnel in India. AR 1696–97. Despite the parties' decidedly different accounts of how the agreement came to be signed, it is undisputed that both parties signed the agreement, that Compunnel gave Gupta the full $28,000 that day, and that Gupta accepted and deposited the checks into his bank account, also on March 10, 2016. AR 1682–83.

The following day, the ALJ issued a Final Order Approving the Parties' Settlement Agreement. AR 1622–23. The order stated that "the original Settlement Agreement was received in the Office of the Administrative Law Judges" on March 10, 2016. AR 1623. The order further stated that the Settlement Agreement "appears to be fair and reasonable," and that "[t]he parties agree that an Order disposing of this proceeding shall have the same force and effect as an Order made after a full hearing pursuant to 20 C.F.R. § 655.840 in accordance with 29 C.F.R. § 18.71(b)(1)." *Id.* Accordingly, the order stated, the parties' Settlement Agreement was "approved" and the matter was dismissed with prejudice. *Id.*

The Settlement Agreement was incorporated by reference into the ALJ's order. *Id.* The agreement is signed by both parties and dated March 10, 2016. AR 1621. It is notarized as to Compunnel's signature, but not as to Gupta's. *Id.* The agreement states, among other things, that Compunnel agrees to pay Gupta $28,000 "as payment in full and final compensation from [Compunnel] to Gupta arising from or in any way related to the employment of Gupta with [Compunnel]." AR 1616–17. A typewritten installment plan for payment of the settlement amount to Gupta is crossed out in pen and replaced by a handwritten note that reads, "On approval by the Court[,] Respondent shall pay the entire settlement amount of $28,0000 payable today." AR 1617. The handwritten note is signed by the President of Compunnel and dated March 9, 2016. *Id.*

Paragraph 10 of the agreement states that the parties "are giving up their right to a trial in connection with the allegations contained in the complaints filed with the U.S. Department of Labor—Wage and Hour Division (WHD) against [Compunnel] or any other rights which are the subject of this Agreement and Stipulation including any rights in the administrative proceedings in ALJ case No. 2011-LCA-045, ARB Case No. 12-049, USDC Case No. 14-CV-4790 (SAS) or any other court related to this matter." AR 1617–18. Paragraph 18 states that Gupta "has no grievances, complaint or protest against [Compunnel] for any reason whatsoever[,]" and that he "assures and promises that he withdraws his claims as filed against Compunnel with Department of Labor, Federal or State or US Citizenship and Immigration services and any other governmental authority in United States or India." AR 1619.

Almost two weeks after signing the Settlement Agreement, on March 22, 2016, Gupta challenged the ALJ's approval order in this Court by filing an emergency motion for a preliminary

injunction and a motion to reopen his case. Dkt. 118. Shortly thereafter, however, Gupta withdrew the emergency motion, stating that he would first exhaust his remedies before the ARB. Dkt. 127.

On March 29, 2016, Gupta filed with the ARB a "Motion for Summary Reversal or Vacatur" of the ALJ's Settlement Order. AR 1692. In the motion, he challenged the ALJ's order approving the settlement agreement on numerous grounds, including that the order was contrary to the ARB's 2014 mandate, that it was procedurally improper, that it was entered into under fraud and duress, and that the ALJ lacked jurisdiction to approve the agreement. On April 29, 2016, the ARB ruled on Gupta's challenge in a Final Decision and Order. AR 1838–41. The ARB construed Gupta's appeal as "rest[ing] entirely on collateral attacks against the Settlement Agreement, including fraud, duress, lack of consideration, lack of voluntariness, lack of initials on every page, and contradiction of public policy." AR 1840. Finding that the agreement "appear[ed] valid on its face," the ARB held that "as an administrative body with only the authority emanating from statutes, implementing regulations, and delegations of authority," it lacked jurisdiction to adjudicate Gupta's collateral attacks to a facially valid agreement. *Id.* Accordingly, the ARB declined Gupta's petition for review and dismissed the matter with prejudice. AR 1841.

## V.    Post-Settlement Proceedings Before this Court

On May 5, 2016, in light of the ARB's Final Decision and Order, Gupta moved to reopen his case in this Court. Dkt. 131. The Court granted the motion to reopen, and on December 30, 2016, Gupta filed his Fourth Amended Petition for Review, Petition for Enforcement, and Complaint (the "Fourth Amended Complaint" or "FAC"), which is the operative pleading in this action. Dkt. 146. The Fourth Amended Complaint principally seeks judicial review of the ALJ

and ARB's orders dismissing Gupta's DOL complaint against Compunnel.[4] Specifically, in Counts 1, 2, and 3, Gupta asserts that the ALJ's approval of the settlement agreement was procedurally and constitutionally improper and challenges the DOL's jurisdiction to approve settlement agreements. In Counts 4 and 5, Gupta argues that certain of the ARB's findings in its 2014 remand order should be reversed. Count 6 alleges a retaliation claim against Compunnel. Count 7 asserts that the DOL abused its discretion in declining to impose civil penalties or to disqualify Compunnel from participation in the H-1B program. Counts 8 and 9 seek partial enforcement of the ARB's 2014 remand order. Counts 10 and 11 seek compensatory and punitive damages against Compunnel.

Compunnel filed a motion to dismiss the FAC, but submitted with it numerous materials outside the pleadings. Dkt.*See generally* Dkts. 149–52. This Court declined to convert Compunnel's motion into one for summary judgment, and Compunnel and Gupta proceeded to take additional discovery. Dkt. 174. Compunnel, the Secretary, and Gupta filed the instant motions for summary judgment. Dkts. 227, 231, 236.

---

[4] The counts are titled as follows: (1) Count 1: Whether the agency (DOL) has jurisdiction to approve, adopt and/or enforce private agreements or consent findings in violation of federal law ('INA'); (2) Count 2: Whether the ALJ (and ARB) dismissal of the case before the agency based on an alleged private agreement that is denied by Gupta is procedurally and constitutionally valid; (3) Count 3: Whether the amount of $28,000 allegedly paid by Compunnel to Gupta is fair, reasonable, and 'adequate' and in 'public interest' to extinguish Compunnel's required wage obligation under 'INA' per ARB Order dated May 29, 2014, and other 'INA' claims of Gupta including retaliation. Whether Gupta's alleged consent is 'knowing' and 'voluntary'; (4) Count 4: Required wages and benefits for the period December 11, 2006 to February 2, 2007; (5) Count 5: Agency's erroneous finding that Compunnel required but Gupta did not go to headquarters in April 2008; (6) Count 6: Retaliation by Compunnel; (7) Count 7: Disqualification of Compunnel from participating in H-1B program, civil money penalties; (8) Count 8: Enforcement of ARB 'DOR' for back wages and benefits, with interest for various periods of violations; (9) Count 9: Enforcement of Administrator's Determination for back wages with interest for various periods of violations; (10) Count 10: Compensatory damages; and (11) Count 11: Punitive damages.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011). When "a party seeks judicial review of agency action, summary judgment is appropriate, since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law." *Residents for Sane Trash Solutions, Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (citation omitted).

Under the APA, "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. §702. A reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[A]gency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Natural Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The reviewing court is not to

"substitute its judgment for that of the agency" and must uphold the agency's decision "[i]f there is sufficient evidence in the record to provide rational support for [its] choice." *Constitution Pipeline Co., LLC v. N.Y. State Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017) (citation omitted).

## DISCUSSION

Compunnel moves for summary judgment principally on the ground that the settlement agreement, which released Gupta's claims against Compunnel in the proceedings before the DOL and this Court, bars all of Gupta's current claims. The Secretary moves for summary judgment on the ground that it was not arbitrary and capricious for the agency to approve the settlement agreement and dismiss Gupta's case. For the reasons set forth below, the Court grants summary judgment to the Secretary and Compunnel.

### I.     The Settlement Agreement

"Under New York law, a release is governed by principles of contract law and a court should enforce a valid release by its clear terms." *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 204 (S.D.N.Y. 2001). [5] In addition, "[f]ederal courts have articulated a strong policy in favor of enforcing settlement agreements and releases." *Levine v. Bd. of Educ. of City of New York*, 1998 WL 386141, at *2 (2d Cir. 1998) (table decision). The settlement agreement signed by Gupta and Compunnel contains a clear and unambiguous release of Gupta's claims. Paragraph 10 of the agreement states that Gupta and Compunnel are both "giving up their right to trial" in three expressly identified proceedings: the proceedings before the

---

[5] The settlement agreement contains the following choice of law provision: "This Agreement shall be governed by and construed under the laws of the United States of America and Competent Court of New York." Although Gupta challenges the validity of the agreement, he does not challenge the choice of law provision, and the parties do not dispute its application. Accordingly, the Court will apply New York and federal law to interpret the contract. *See Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 526 (S.D.N.Y. 2001).

ALJ, the proceedings before the ARB, and the proceedings before this Court. AR 1617–18. In addition, paragraph 18 of the agreement states that Gupta "has no grievances, complaint or protest against [Compunnel] for any reason whatsoever," and that he "assures and promises that he withdraws his claim as filed against [Compunnel] with Department of Labor, Federal or State or US Citizenship and Immigration Services and any other governmental authority in United States or India." AR 1619.

These terms are clear and unambiguous. By entering into the settlement agreement, Gupta agreed to withdraw his claims against Compunnel in the proceedings before this Court, as well as in the proceedings before the Department of Labor. Thus, if the settlement agreement is valid, it bars Gupta's claims against Compunnel and Compunnel is entitled to judgment as a matter of law. *See Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 298 (S.D.N.Y. 1997) ("Summary judgment on a contract interpretation dispute is clearly permissible when the language of the contract provision in question is unambiguous.").

Gupta does not dispute that the terms of the settlement agreement unambiguously release his claims against Compunnel. Rather, he asserts that the settlement agreement is invalid and unenforceable for the following reasons: his signature does not appear on every page, his signature appearing on the final page is not notarized, the agreement was entered into under circumstances constituting fraud and financial duress, and the agreement was promptly rescinded. All of these arguments lack merit.

As to the signatures, "[a] party need not sign every page of a contract for the whole of the document to be effective." *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co., Inc.*, 725 F. Supp. 1525, 1531–32 (D. Colo. 1989). Nor is notarization necessarily required to bind parties to a settlement agreement. *Cf.* N.Y. Gen. Obligations Law, Ch. 24-a, § 5-705 (requiring notarization

for assumption of indebtedness secured by a mortgage); N.Y. Real Prop. Law § 298 (permitting notarization to serve as one method of effecting transfer of real property).[6] Gupta does not claim that the signature appearing on the final page of the settlement agreement was forged or that it otherwise does not belong to him. Gupta Counterstatement ("Gupta CS"), at ¶¶ 13, 15, 17, 64 (Dkt. 245). To the contrary, there is no genuine dispute that the final page of the agreement was "signed by Gupta." *Id.* ¶ 17. Gupta's challenge to the form and placement of his signature thus does not itself raise a dispute of material fact, so long as there was "a meeting of the minds and an intention to be bound." *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 49–50 (D. D.C. 2009).

Gupta argues that no such meeting of the minds took place, asserting that the agreement was signed under circumstances constituting fraud and economic duress. Gupta states, for example, that when he and Compunnel were at the office of the ALJ on March 10, the parties were briefly left alone and Compunnel "coerced Gupta to accept $28,000 by checks in exchange for settling any potential legal claims under the laws of India by signing only one paper that does not contain any release language for 'INA' claims." Gupta Declaration ("Gupta Decl."), at ¶¶ 39–40 (Dkt. 233). Elsewhere, Gupta states that he signed the settlement agreement "under illegal financial duress caused by Compunnel by depriving him of his statutory wages guaranteed by 'INA' for several years." Gupta Mem. in Opp. at 17 (Dkt. 232).

Each of these arguments fails. First, to establish a claim for economic duress, Gupta must show that he was "forced by [a] wrongful threat precluding the exercise of [his] free will into involuntarily executing the Settlement Agreement because of economic duress." *Benjamin Goldstein Prods., Ltd. V. Fish*, 198 A.D.2d 137, 850 (1st Dep't 1993). Gupta has not made any

---

[6] Even signatures are not necessarily required to manifest assent to a written contract, when the parties' conduct manifests that assent. *See 251 W. 18th St., LLC v. Del Rio Stellita*, 2002 WL 992097, at *1 (1st Dep't Apr. 26, 2002) (per curiam) (unsigned contract valid where tenant failed to sign lease but made payments in accordance with its terms).

showing whatsoever that he was threatened by Compunnel, much less that he was threatened to the point of being unable to exercise his free will. To the contrary, the record shows the Gupta voluntarily and independently met Compunnel's representatives at the office of the ALJ, and that the day before signing the agreement, he negotiated to receive the $28,000 payment upfront, rather than in installments. AR 1614, 1617.

As to fraud, "[a] plaintiff seeking to invalidate a release due to fraudulent inducement must establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011). The record establishes that, at the very least, one of these elements—justifiable reliance—is not satisfied here. The day before the agreement was signed, Gupta discussed the details of the agreement's terms with both Compunnel and the ALJ's law clerk at the office of the ALJ. AR 1613. He negotiated to obtain the $28,000 payment up front, rather than in installments, and he asked questions about the scope and meaning of another of its terms. *Id.* Moreoever, in the weeks leading up to its signing, Gupta corresponded over email with Compunnel's counsel and participated in the drafting of the settlement agreement. AR 1763–75. For example, in reply to an email from Compunnel's counsel that attached a document titled "Settlement Agreement – Gupta FINAL," Gupta wrote, "I notice two minor corrections: Clause 19: In last . . . line, correct spelling error, 'to and government agency' [] to [']any government agency' . . . Clause 21: Delete the sentence—'In addition [Compunnel] will be liable for monetary penalty as described in Clause 6 of this Agreement.'" AR 1771–72. Moreover, on March 7, 2016—three days before the agreement was signed—Gupta sent an email to Compunnel's counsel stating "[t]his is to acknowledge our discussions to settle the litigation" for

$28,000 paid in installments. AR 1775. At the top of the email, Gupta wrote in bold "Re: ALJ Case No. 2011-LCA-045, Compunnel," referring to the case number of his proceedings against Compunnel before the ALJ. *Id.* The record thus firmly establishes that Gupta participated in negotiating and drafting the terms of this agreement, that he viewed the agreement multiple times before the date of signing, and that he was well aware that the agreement pertained to his proceedings before the DOL. To the extent Gupta relied on any representation by Compunnel that the settlement agreement solely released Gupta's claims under the laws of India, such reliance was surely unjustified. *See Merrill Lynch & Co. v. Allegheny En., Inc.*, 500 F.3d 171, 182 (2d Cir 2007) (holding that justifiable reliance requires proof "that [the] reliance on the alleged misrepresentations was not so utterly unreasonable, foolish or knowingly blind as to compel the conclusion that whatever injury it suffered was its own responsibility.").[7]

Furthermore, even if Gupta were able to make a showing of fraudulent inducement or economic duress, that would make the settlement agreement merely voidable, not void, and—rather than void the agreement—Gupta subsequently ratified it. "Under New York law, a contract or release, the execution of which is induced by duress, is voidable." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (citation omitted). Likewise, "[i]t is well-settled in New York that where a party is fraudulently induced to enter into a contract, the contract is voidable at the instance of the defrauded party." *Bazzano v. L'Oreal, S.A.*, No. 93-CV-7121 (SHS), 1996 WL

---

[7] In any event, this Court rejects as a matter of law Gupta's present claim that when he signed page six of this agreement—the very agreement he had been negotiating with Compunnel for days—he thought he was signing an entirely different agreement that released only his legal claims against Compunnel in India. Not only is there ample evidence in the record regarding his knowledge of the terms of the agreement at issue here, but there is also no evidence (other than Gupta's mere assertion) that there existed any agreement to settle only the claims in India. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

254873, at *3 (S.D.N.Y. May 14, 1996). Although fraud may render a contract void in "rare cases," *see Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (citation marks omitted), there is simply no evidence that this is such a case.

A voidable contract, unlike a void contract, may be ratified by the parties' "fail[ure] to timely disaffirm it or by acts . . . that are consistent with a showing of an intent to be bound[.]" *Weiss v. Phillips*, 157 A.D.3d 1, 8 (1st Dep't 2017). Thus, "[a] party who executes a contract under duress and then acquiesces in the contract for any considerable length of time, ratifies the contract." *Sheindlin v. Sheindlin*, 88 A.D.2d 930, 931 (2d Dep't 1982). "To disaffirm the contract, the defrauded party must offer to return any consideration received." *Ladenburg*, 176 F. Supp. 2d at 204; *Nicomedez v. AIG*, No. 12-cv-490 (KBF), 2012 WL 5264560, at *4 (S.D.N.Y. Oct. 16, 2012) ("It is well established that where money paid as consideration for a release acquired by fraud or duress is retained after the releaser becomes aware of the fraud or the duress is removed, ratification may be found."). Here, it is undisputed that Gupta never offered to return the $28,000 he received from Compunnel after signing the settlement agreement. Gupta Dep. Tr. at 74:8. On March 10, 2016, Compunnel gave Gupta the full $28,000 agreed to in the contract. Gupta deposited the full sum into his bank account that day, and he has kept it ever since. Gupta CS at ¶ 15, 33, 43; AR 1682–83; Gupta Dep. Tr. at 74:8.

Moreover, Gupta cannot claim that in the time since receiving the money he has been "under the same continuing duress," because his court filings show that he became aware of the purported fraud, and complained of it to the Court, just two weeks after executing the agreement. *See* Dkt. 118; *Sosnoff v. Carter*, 165 A.D.2d 486, 492 (1st Dep't 1991). Nonetheless, he failed to return the money. Gupta's claim that he rescinded the contract fails for a similar reason. *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 499 (S.D.N.Y. 2004) ("Generally a party seeking

18

rescission of a contract must tender the return of consideration it received pursuant to the voidable contract."); *Cf. Sec. Mut. Life Ins. Co. of New York v. Rodriguez*, 65 A.D.3d 1, 626 (1st Dep't 2009) (disagreeing with *Prudential Ins. Co. of Am. V. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300–03 (S.D.N.Y. 1986)).[8]

The Court thus finds that there is no genuine dispute of material fact concerning the validity and enforceability of the settlement agreement. The Court further finds that the agreement contains an unambiguous release of Gupta's claims against Compunnel, both in this Court and in the DOL. Accordingly, Gupta's claims against Compunnel are barred and Compunnel is entitled to judgment as a matter of law.

## II.     The Agency's Orders

Despite the valid settlement agreement barring his claims in this Court and in the DOL, Gupta seeks judicial review of the DOL's orders approving the settlement agreement and dismissing his case with prejudice. Gupta asserts numerous arguments as to why the DOL's dismissal of his case was arbitrary and capricious, including that the ALJ lacked jurisdiction to approve his settlement agreement, that the approval of the agreement was procedurally deficient and denied him due process and equal protection under the law, and that the ALJ arbitrarily determined that the amount of the agreement was fair and reasonable. FAC, Counts 1–3.[9]

---

[8] Gupta's rescission claim also fails on the merits. As explained above, the Court sees no basis in the record for any claims of "fraud, duress, misrepresentation, or undue influence," nor is the contract "unconscionable under the circumstances." *See generally Miller v. Hartford Life Ins. Co.*, 64 F. App'x 795, 798 (2d Cir. 2003) (summary order) (listing bases for rescinding annuity agreements and other contracts under New York law).

[9] To the extent that Gupta seeks damages from the ALJ and ARB for purportedly violating his constitutional rights, such claims fail on multiple grounds, not least of which is that the ALJ and ARB are protected by quasi-judicial and sovereign immunity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of

Although Gupta raises interesting questions about the propriety of the DOL's orders under the unique circumstances of this case, this Court need not decide those questions to resolve the instant dispute.

Regardless of whether it was proper for the DOL to approve the settlement agreement and dismiss Gupta's case, Gutpa still has entered into a valid and enforceable agreement releasing his claims against Compunnel. Neither the H-1B provisions of the INA nor its implementing regulations required the DOL to approve the parties' settlement agreement in order for it to become effective. *See* 8 U.S.C. § 1182(n)(2); 20 C.F.R. 655 Subpart I. As discussed above, the settlement agreement is valid and has been ratified by Gupta's continued adherence to the contract. Thus, even if the Court were to find either that the ALJ had erred in approving the settlement agreement or that the ARB had erred in declining to review it, Gupta still has released his claims against Compunnel by virtue of the settlement agreement and his claims before the DOL are therefore barred. Indeed, even if the Court were to reverse the DOL's orders and remand the case back to the ARB, the ARB would simply dismiss Gupta's case again, because his claims in the proceedings before the ALJ and the ARB are barred by the valid release and his ratification of the contract. Remand under these circumstances would thus be "completely futile." *Alam v. Gonzales*, 438 F.3d 184, 188 (2d Cir. 2006). "[A]n error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error." *Id.* at 187–88 (quoting *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 161 (2d Cir. 2006)). Accordingly, without deciding whether the ALJ or ARB erred, this Court declines to vacate the administrative orders or to remand to the DOL, where the inevitable result, as before, is the

---

sovereign immunity, unless such immunity is waived."); *Gertskis v. New York Dep't of Health & Mental Hygiene*, No. 13-CV-2024 (JMF), 2014 WL 2933149, at *5 (S.D.N.Y. June 27, 2014) ("[T]he doctrine of quasi-judicial immunity . . . bars claims against administrative law judges performing judicial functions." (citation omitted)).

dismissal of Gupta's case. Gupta's petition for review is thus denied and the Secretary's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment of the Secretary and Compunnel are granted. Gupta's motion for partial summary judgment is denied.[10] The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 220, 227, 231, and 236, enter judgment for Compunnel and the Secretary, and mail a copy of this Opinion to Gupta.

SO ORDERED.

Dated:     September 30, 2018
           New York, New York

                                          _____
                                          Ronnie Abrams
                                          United States District Judge

---

[10] In light of the Court's grant of summary judgment in favor of the Secretary and Compunnel, Gupta's "motion to strike affirmative defenses" is denied as moot.